UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
GUERRIER HENRI,

                Plaintiff,                Case No. 24-cv-329 (VEC)

    -against-                  **FIRST AMENDED COMPLAINT**

THÉRIEL THÉLUS and             Plaintiff demands trial by jury
SENET D. ACHILL,                of all issues so triable.

                Defendants.
-------------------------------------------------------x

      Plaintiff GUERRIER HENRI, by his attorneys, Law Office of Richard A. Altman, for his First Amended Complaint against defendants, alleges as follows:

### INTRODUCTION

      1. This is an action for defamation, based upon defendants' posting on a website false and defamatory accusations of criminality by, of and concerning the plaintiff.

      2. Plaintiff is a radio broadcaster from Haiti. He has been one since 2000, and has worked at stations there such as Vision 2000, Signal FM, Caraibes FM, Radio Zenith FM, and Radio Mega. He currently presents a show on Radio Mega, from Monday to Friday from 8 pm to 10 pm. He has thousands of regular listeners.

      3. From 2013 to 2015, plaintiff was the News Director at Radio Zenith FM. During that time, he was the direct supervisor of defendant Thériel Thélus.

      4. In May 2014, plaintiff fired defendant Thélus, because of certain ethical violations, and his undesirable behavior toward coworkers.

5. Currently, defendant Thélus presents his own program on Facebook and YouTube, Monday to Friday from 6 pm to 9 pm. The Thériel Thélus show is also broadcast in Haiti and in the Caribbean by Radio Émancipation FM.

6. Defendant Thélus also publishes articles on a website, www.tripfoumi.com, which is a news source about events in Haiti.

7. Defendant Senet D. Achill is an owner of the website www.tripfoumi.com

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this case, pursuant to 28 U.S.C. § 1332(a)(2), in that it is between a citizen of a foreign country and citizens of this State, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. Plaintiff is a resident and citizen of Haiti.

10. Defendant are residents and citizens of the State of New York.

11. Pursuant to 28 U.S.C. § 1391(a), venue is proper in this district in that the defendants are subject to personal jurisdiction in this district.

## THE FACTS

12. On or about January 30, 2023, plaintiff received a letter from the Haitian Ministry of Justice and Public Security. A copy in the original French language is annexed as Exhibit A, followed by a certified English translation.

13. The letter invited plaintiff to appear two days hence, 1 February 2023, to discuss certain matters which he had spoken about on a radio broadcast. The letter gave no

indication, assertion or implication that plaintiff had personally committed any violation of law whatsoever, and no charges or accusations were made in the letter.

14.  By its own terms, the letter was an invitation, not a summons, and did not mention any possible adverse consequences for not responding.

15.  The letter said, in pertinent part, as follows:

> The Public Prosecutor, acting as guardian of social order, notes on one of your recent shows serious excesses that may constitute an offense against public order. These deviations violate the basic rules that govern the noble profession of journalism and the provisions of articles 28-2, paragraph 2, 28-3 of the Constitution as well as the provisions of articles 64, 67, 313 et seq. of the Haitian penal code.

16.  Plaintiff was not in Haiti at that time, and he asked the Public Prosecutor to postpone the appearance to another date.

17.  If he had been in Haiti, he would without question have appeared as requested.

18.  But the Public Prosecutor did not respond to plaintiff's request. Plaintiff was not asked to appear on a later date, and has heard nothing further about the matter from the Public Prosecutor to the present time.

19.  Had the matter been a potential criminal offense, he would not have merely been "invited," but would have in all likelihood been summoned, or even potentially arrested if he had not responded.

20.  The following day, January 31, 2023, the defendants posted on a website which they own and operate, called https://www.tripfoumi.com, a false and defamatory statement

of and concerning the plaintiff. A screenshot of the original posting is annexed as Exhibit B, and a certified translation of the French original is part of Exhibit B.

21. The posting reads in full as follows:

Guerrier Henri summoned by the court of Port-au-Prince for complicity and contact with armed gangs.
TripFoumi Enfo – January 31, 2023 1-minute reading time.
(TripFoumi Enfo) – Haiti is under the influence of armed gangs. Several political, economical and media personalities would be having good relationships with these criminals. It is in this context that the journalist Guerrier Henri was summoned by the Court of Port-au-Prince according to the Radio Télé Emancipation.
The information professional was accused of having links with armed bandits. In one of his declarations, he had asked for forgiveness for giving the floor to known criminal during his show.
His file is rumored to be transferred to the Judicial Investigation Office. The charges are receiving stolen goods, complicity and privileged relationships with armed gangs, according to the previously cited station.

22. The foregoing language, taken as a whole, is false and defamatory, in that it is a factual allegation that plaintiff was charged with the crimes of "receiving stolen goods, complicity and privileged relationships with armed gangs," all of which are serious offenses.

23. The defendants' statement is not a substantially accurate report of the original letter from the Public Prosecutor.

24. A statement that plaintiff was "summoned" carries a substantially different implication from "invited."

25. The text of the posting further says that "the information professional had been accused of having dealings with armed bandits."

26. The text of the posting further says that "he apologized for putting notorious criminals on the air."

27. The text further says that "[h]is case is about to be transferred to the investigating magistrate's chambers."

28. In fact, the text of the letter from the Public Prosecutor says only that plaintiff was invited to come to the office to discuss his broadcasts, and made no allegations of potential criminality whatsoever.

29. The letter does not state or imply that plaintiff faced charges of "receiving stolen goods."

30. The letter does not state or imply that plaintiff faced charges of "complicity and relations with armed gangs."

31. The letter does not state or imply that plaintiff had been accused of "having dealings with armed bandits."

32. The letter does not state or imply that plaintiff "apologized for putting notorious criminals on the air."

33. The text further says that "[h]is case is about to be transferred to the investigating magistrate's chambers."

34. The letter makes no such statement.

35. On August 30, 2023, the Public Prosecutor issued a statement which said that "from July 2022 to date, no complaint has been filed against Mr. Guerrier HENRI." A copy of the original statement and a certified translation, are attached as Exhibit C.

36. Defendants have not to this day ever corrected their erroneous report as a result of the Public Prosecutor's statement.

37. Plaintiff has to this day been accused of nothing whatsoever, let alone convicted.

38. Plaintiff has never been charged with, nor convicted of, any crime whatsoever in any jurisdiction.

39. Plaintiff does not engage in and has never engaged in "a crime of complicity and relations with armed gangs."

40. Plaintiff does not "have] dealings with armed bandits."

41. Plaintiff has never apologized for "putting notorious criminals on the air.,"

42. The quoted statements are false and defamatory *per se,* in that they are accusations of felonious criminal conduct.

43. The above-quoted statements are false and defamatory *per se*, in that they impugn plaintiff's integrity as a broadcaster, whom the public trusts to provide honest and accurate reporting.

44. The statement defendants published contains additional factual allegations which do not appear in the Public Prosecutor's letter, and which are not reasonably accurate interpretations of what the letter actually says.

45. Therefore, the defendants' statements were necessarily made with knowledge that they are false, or at least were made reckless disregard of whether they were false or not.

46. Because the defendants' statements are not a reasonably fair and accurate report of an official proceeding, they fall outside of the privilege of N.Y. Civil Rights Law § 74, or any other privilege which may be available to journalists or reporters.

**FIRST CLAIM**
**AGAINST BOTH DEFENDANTS**
**(Defamation *per se*)**

47. Plaintiff re-alleges paragraphs 1 through 46.

48. The defendants' above-described statements are defamatory *per se*, because they are false factual accusations of criminal conduct by the plaintiff

49. The defendants' statements and action are defamatory *per se*, because they are false factual accusations that plaintiff has engaged in behavior incompatible with the proper ethical or professional conduct of a radio journalist.

50. The statement have damaged plaintiff's reputation in the community to whom he broadcasts, and to the members of the public to whom he is known.

**EVIDENCE OF MALICE**

51. Because plaintiff was formerly the supervisor of defendant Thélus, and discharged him for cause, he has always been resentful toward the plaintiff.

52. While under plaintiff's supervision, defendant Thélus harassed other employees.

53. Defendant Thélus willfully exaggerated and distorted what the Public Prosecutor actually said, with the intention to discredit the plaintiff in the opinion of his audience.

54. Defendants have, by publishing their false and defamatory accusations, placed plaintiff at risk of violence.

55. Plaintiff has in fact received threats of violence.

56. Defendant Thélus has a history of making false statements which have led to violence against those he falsely accused.

57. For example, in a statement he made on or around December 21, 2022, he made an oral statement, referring to an individual named Ralphe Theodore, by his nickname Sexy. A translated copy of this statement (with an accompanying translator's certificate) is annexed as Exhibit D.

58. The statement asserts that Thélus had observed Theodore's movements, and thus that he (Thélus) was physically present in Haiti at the time.

59. This is false; Thélus was not in Haiti at the time, and thus could not have observed Theodore's movements.

60. On information and belief, because of defendant Thélus's accusations against Theodore, he (Theodore) was murdered shortly thereafter by unknown assassins.

61. Defendant Thélus knew that his statements about the plaintiff were false, because on August 25, 2023, he posted the Public Prosecutor's letter–which directly contradicts his statements and thus establishes their falsity–on his Facebook page.

62. Plaintiff asked defendant Thélus to remove the Tripfoumi article after the defendant posted the public prosecutor letter on his Facebook page, but he has refused to do so.

63. Defendant Achill is jointly and severally liable for the defamatory statements complained of, because he is the owner of the website tripfoumi.com, and is thus responsible for its publication, and for the fact that it remains on the website to this day.

64. Defendant Achill further knows, or has reason to know, that his statements about the plaintiff were false, because he has refused to remove the article from the tripfoumi website.

65. It is common knowledge, and widely reported, that Haiti has for the past few years, suffered from a tragic wave of violence.

66. By falsely associating plaintiff in the slightest degree with this wave of violence, the defendants have defamed him by implication.

67. Plaintiff has at times interviewed criminals on his programs, but that does not make him into an accomplice to their crimes, and it certainly does not make plaintiff a criminal himself.

68. Were it otherwise, any journalist who interviews a criminal as part of his professional obligations could be falsely portrayed as a criminal himself.

69. The impression left by the defendants' statements is far different from that of the Public Prosecutor's invitation. It adds statements not in (or reasonably implied from) the invitation, and the statements are therefore not privileged.

70. Moreover, the defendants' statements were knowingly false, and defendant Thélus has previously made false statements, both about plaintiff and others, one of which, in the above-cited example, led to someone being assassinated.

71. This demonstrates a shocking and dangerous degree of indifference to the truth, or to the consequences of false statements, which supports the allegation of the existence of malice.

**SECOND CLAIM
AGAINST BOTH DEFENDANTS
(Defamation *per se*)**

72. Plaintiff re-alleges paragraphs 1 through 71.

73. On or about December 1, 2023, plaintiff caused to be sent to defendant Thélus a cease-and-desist letter, demanding that the defamatory statements in the original posting be taken down. A copy of the letter is attached as Exhibit E.

74. Plaintiff has received no response whatsoever to this letter.

75. However, at some time shortly after the letter was sent, the original tripfoumi.com posting on the website was slightly altered. A screenshot as it appeared on January 2, 2024 (and as it appears today) is attached as Exhibit F, along with a certified English translation.

76. The revised posting[1] reads in pertinent part as follows:

Guerrier Henri Invited To The Port-au-Prince Public Prosecutor's Office!
Haiti is in the grip of armed gangs. Political, economic and media figures have apparently good relations with these thugs. Journalist Guerrier Henri has been invited to the Port-au-Prince public prosecutor's office on Wednesday, February 1, 2023, to answer questions from Police Commissioner Lafontant, according to Radio TeleEmancipation. The news professional is accused of having privileged relations with armed bandits, according to a tweet from radio Emancipation FM. In one of his broadcasts, he had asked the public to forgive him for having given his microphone to the various gang leaders who terrorize the population, notably Krisla, head of Tibwa, and Vitelhomme Innocent, the powerful "Kraze Barye" gang leader actively wanted by the US judicial authorities for the kidnapping of several American citizens.
...
According to Emancipation FM radio, his case is about to be transferred to the examining magistrate's office. The charges are: receiving stolen goods, complicity and privileged relations with armed gangs, as reported by Emancipation FM, a radio station broadcasting in Port-au-Prince. Several political and economic figures have already been sanctioned by Canada and the United States for their alleged involvement in gang financing, embezzlement and other acts of corruption. Some journalists in Haiti describe gang leaders as victims of society. They are also social, community or development agents.

77. Except for the altered headline, the statements in the revised posting are as false and defamatory as those in the original posting.

78. The only major difference appears to be the removal of the words "for complicity and contact with armed gangs" in the headline, and their replacement by an exclamation point.

---

[1] The revised posting may be seen at this link:
link:https://www.tripfoumi.com/blog/2023/01/31/guerrier-henri-invite-au-parquet-de-port-au-prince-soupconne-de-meche-avec-des-gangs/

79. The defendants are as liable for republishing the false and defamatory statements as they are for the original one.

## **RELIEF DEMANDED**

WHEREFORE, plaintiff demands relief as follows:

On each claim, a judgment declaring that the statements complained of are false and defamatory, and that plaintiff is entitled to compensatory and punitive damages against defendants in such sums as may be awarded by a jury and the Court, but not less than $250,000 on each one;

A permanent mandatory injunction requiring that the statements be removed from, and never republished in, any place, medium, website or any other place where they have been publicly available;

Together with the costs and disbursements of this action, and such other relief as may be just, including reasonable counsel fees.

Dated: New York, New York
       May 10, 2024

*/s/ Richard A. Altman*

LAW OFFICE OF RICHARD A. ALTMAN
Attorneys for Plaintiff
150 East 56th Street, Suite 12B
New York, NY 10022
212.633.0123
altmanlaw@earthlink.net