UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
GUERRIER HENRI,

                Plaintiff,               Case No. 24-cv-329 (VEC)

     -against-                      Plaintiff requests oral argument.

THÉRIEL THÉLUS and
SENET D. ACHILL,

                Defendants.
----------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Dated: New York, New York
       July 12, 2024

                         LAW OFFICE OF RICHARD A. ALTMAN
                         Attorney for Plaintiff
                         150 East 56th Street, Suite 12B
                         New York, New York 10022
                         212.633.0123
                         altmanlaw@earthlink.net

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I:
THE EXHIBITS ATTACHED TO THE DEFENDANTS' MOTION PAPERS
CANNOT BE CONSIDERED ON THIS RULE 12(b)(6) MOTION,
UNLESS THE COURT CONVERTS THE MOTION TO ONE FOR
SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT II:
N.Y. CIVIL RIGHTS LAW § 74 DOES NOT APPLY, BECAUSE THE
STATEMENTS WERE NOT A REASONABLY ACCURATE
SUMMARY OF THE PROSECUTOR'S LETTER, AND CONTAINED
OTHER MATTER.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

POINT III:
THE HEADLINE CAN BE SEPARATELY DEFAMATORY. . . . . . . . . . . . . . . . . . 14

POINT IV:
THE WIRE SERVICE DEFENSE DOES NOT APPLY HERE.. . . . . . . . . . . . . . . . . 16

POINT V:
THERE ARE SUFFICIENT ALLEGATIONS OF MALICE
TO PERMIT DISCOVERY TO GO FORWARD.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v Liberty Lobby, Inc.*, 477 US 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Carroll v Trump*, 664 F.Supp.3d 550 (SDNY 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celle v Filipino Reporter Enters.,* 209 F.3d 163 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . 15

*Cianci v New Times Publishing Co.,* 639 F.2d 54 (2d Cir.1980) . . . . . . . . . . . . . . . . . . 15

*Clarkson Co. v. Shaheen*, 660 F.2d 506 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*D'Annunzio v Ayken, Inc.*, 876 F Supp 2d 211, 218 (E.D.N.Y 2012) . . . . . . . . . . . . . . . 11

*DF Ventures, LLC v Aaron & Gianna, PLC*, 2024 US Dist LEXIS 37407, (SDNY Mar. 4, 2024, No. 22-cv-9586 (LJL)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dollar Phone Corp. v Dun & Bradstreet Corp.*, 2010 US Dist LEXIS 134417, at *17 [EDNY Sep. 2, 2010, No. 09-CV-3645 (ILG) (SMG)]) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fairstein v Netflix, Inc.*, 553 F Supp 3d 48, 57-58 [SDNY 2021] . . . . . . . . . . . . . . . . . . 18

*Goel v Bunge, Ltd.*, 820 F3d 554  (2d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Harte-Hanks Communications, Inc. v Connaughton*, 491 US 657, 668, 109 S Ct 2678, 105 L Ed 2d 562 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Hayashi v Shunzo Ozawa*, 2019 US Dist LEXIS 53130 (SDNY Mar. 28, 2019, No. 17-cv-2558 (AJN)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Holland v Lions Gate Ent.*, 2024 US Dist LEXIS 80473 (SDNY May 2, 2024, No. 21-CV-2944 (AT) (JLC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hu v City of NY*, 927 F3d 81 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jewell v NYP Holdings, Inc.,* 23 F.Supp.2d 348 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . 16, 17

*Karedes v. Ackerley Group, Inc.,* 423 F.3d 107 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . 11

*Kirch v. Liberty M edia Corp.,* 449 F.3d 388 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . 8

*Oberlander v Coinbase Global Inc.,* ___F 3d___, 2024 U.S. App. LEXIS 8200 (2d Cir. Apr. 5, 2024, No. 23-184-cv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Palin v. N.Y. Times Co.,* 940 F.3d 804 (2d Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Rudin v. Dow Jones & Co.,* 510 F. Supp. 210 (S.D.N.Y.1981) . . . . . . . . . . . . . . . . . . . . 15

*Russian Entertainment Wholesale, Inc. v Close-Up Intl., Inc.*, 482 F App'x 602, 604 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Samuels v. Air Transp. Local 504,* 992 F.2d 12 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . 4

*Test Masters Educ. Servs. v NYP Holdings, Inc.*, 2007 US Dist LEXIS 96228 (SDNY Sep. 18, 2007, No. 06 CV 11407 (BSJ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wexler v Allegion (UK) Ltd*., 374 F Supp 3d 302 (SDNY 2019) . . . . . . . . . . . . . . . . . . 10


**STATE CASES**

*Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 AD2d 434 (1st Dept. 1995) . . . . . . . . . 11

*Gear Up, Inc. v City of New York,* 140 AD3d 515 (1st Dept 2016) . . . . . . . . . . . . . . . . . 18

*Kipper v NYP Holdings Co.,* 12 NY3d 348 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Layne v. Tribune Co.,* 108 Fla. 177, 146 So. 234 (1933) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ocean State Seafood, Inc. v. Capital Newspaper, Div. of Hearst Corp.*, 112 A.D.2d 662, 492 N.Y.S.2d 175 (3d Dept. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Schermerhorn v Rosenberg*, 73 AD2d 276 (2d Dept 1980) . . . . . . . . . . . . . . . . . . . . . . . 15

*Shubert v. Variety, Inc.,* 128 Misc 428 (Sup.Ct.N.Y.Co.1926), *aff'd* 221 App.Div. 856 (1st Dept.1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Silsdorf v Levine,* 59 NY2d 8 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL STATUTES**

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 9, 10

**STATE STATUTES**

CPLR 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

N.Y. Civil Rights Law § 74 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 14

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### PRELIMINARY STATEMENT

Plaintiff's attorney, Law Office of Richard A. Altman, submits this memorandum of law in opposition to the defendants' motion to dismiss the First Amended Complaint ("FAC").

Despite defendants' strenuous attempts to make it appear far more complicated than it is, this is a very simple case of defamation, based upon the common law of the State of New York. The essential elements of such a claims are well-established: "Under New York law a defamation plaintiff must establish five elements: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

The FAC alleges that plaintiff Guerrier Henri is a Haitian citizen who hosts a weekly radio broadcast in Haiti. It alleges that the defendants own and operate an internet website, and that they published on that website a series of false statements which accused the plaintiff of criminal conduct. The FAC further alleges that the statements were deliberately made, and that there are sufficient allegations of malice. The false allegations of criminal conduct are defamatory *per se.* These allegations satisfy the five elements.

-1-

1. The statements, quoted *in haec verba* in the FAC (and copies of the original statements are exhibits) are plainly of and concerning the plaintiff Guerrier Henri. That is undisputed.

2. The statements were published on the defendants' website, and were viewed by many people. Moreover, the defendants are New York residents and were served in New York, so there is no question of personal jurisdiction (which defendants do not dispute). Thus the defamation exception of CPLR 302 does not apply here. And there is further no question that the laws of Haiti have no bearing on this case, although defendants submit much material on it. But the defendants are New York residents, and the statements were published in New York. That is sufficient to apply New York law.

3. The FAC alleges that the statements were made with the requisite degree of fault. While it has not been established that plaintiff is a public figure in New York (rather than in Haiti), for present purposes on this motion, plaintiff will concede that he is one. The determination is a question of law for the Court. In any event, "a defamation plaintiff is required to establish the defendant's actual malice, regardless of whether the plaintiff is a public figure, if the allegedly defamatory statement is made in connection with an issue of public interest." (*Holland v Lions Gate Ent.*, 2024 US Dist LEXIS 80473, at *40 [SDNY May 2, 2024, No. 21-CV-2944 (AT) (JLC)]). We would not dispute that the subject of violence in Haiti is a matter of public interest, both in Haiti and in the United States. But that

is only the baseline requirement, and the existence of malice is sufficiently pleaded to allow discovery to proceed.

The FAC has six exhibits:

1. The letter from the Public Prosecutor dated January 30, 2023 ;

2. A screenshot of the defendants' website page posted the following day with the defamatory statements;

3. The Public Prosecutor's statement dated August 30, 2023,  which said that "from July 2022 to date, no complaint has been filed against Mr. Guerrier HENRI;"

4. A copy of a false statement made by defendant Thélus;

5. A letter from plaintiff's counsel.

6. A revised statement made by defendant Thélus.

The defendants' principal arguments may be summarized as follows

1. The Court should consider the underlying bases for defendants' statements, namely the prior and subsequent letter from the Public Prosecutor. But of course the letter is attached to the FAC, and the Court can readily note the differences between what it says and what the defendants said it says. That is the crux of this case. As for the 2024 letter, they say that it has no bearing on this case, which was based on the defendants' 2023 statements

2. The exhibits should be considered because they are either incorporated by reference or integral to the complaint, or the Court can take judicial notice of them.

3. The Court should consider the transcripts of the plaintiff's radio interviews with criminals.

4. The fair reporting, fair index, and wire service privileges bar this action

5. Plaintiff is a public figure and the complaint fails to sufficiently allege malice.

6. The statements are true.

7. Defendants also make two arguments which do not merit extensive comment: (a) plaintiff has misconstrued the translations; and (b) plaintiff's amendments are designed to bolster his credibility and demean defendant Thélus and are not relevant to the complaint nor to the motion to dismiss. Neither are a basis for dismissal.

**POINT I**

**THE EXHIBITS ATTACHED TO THE DEFENDANTS' MOTION PAPERS CANNOT BE CONSIDERED ON THIS RULE 12(b)(6) MOTION, UNLESS THE COURT CONVERTS THE MOTION TO ONE FOR SUMMARY JUDGMENT.**

The defendants, faced with a simple twelve-page complaint, with six short exhibits, ask the Court to consider no less than nineteen exhibits comprising 131 pages as part of their motion to dismiss. But the Court cannot properly do so. A District Court, faced with a Rule 12(b)(6) motion to dismiss, can sometimes consider such materials. But those materials can only be "documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken." *Hu v City of NY*, 927 F3d 81, 88 (2d Cir. 2019), *citing Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993). Nothing else

-4-

was required to support the allegations of the complaint, and so nothing else need–or even can–be considered.

The defendants' exhibits seek primarily to further defame the plaintiff, and to show that he is a liar and a suspected criminal, because he has interviewed suspected criminals on his radio program. But interviewing a criminal–even a convicted one–does not make the interviewer an accessory to a crime, or a criminal himself. Jailhouse interviews are perfectly acceptable aspects of news gathering, and an interviewer is not a co-conspirator. But what is not acceptable is to falsely characterize the interviewer as himself a criminal, when there is no basis to do so. What matters is not what was said in the interview, but what the defendants said about the plaintiff.

In *Goel v Bunge, Ltd.*, 820 F 3d 554  (2d Cir. 2016), the Second Circuit said:

Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials.

A complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that litigation...A contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding—one featuring a bespoke factual record, tailor-made to suit the needs of defendants.
820 F3d at 559-60.

*See also DF Ventures, LLC v Aaron & Gianna, PLC*, 2024 US Dist LEXIS 37407, at

*1, n 1 [SDNY Mar. 4, 2024, -cv-9586 (LJL)])(*citing Goel, supra*).

The defendants' 131 pages of exhibits are precisely the kind of submission that the Second Circuit rejected in *Goel*, "a bespoke factual record, tailor-made." Not one page of the entire submission should be considered on this motion, and it should be ignored in evaluating the simple allegations of the FAC. The documents are neither incorporated by reference in the FAC, nor are they integral to it, nor did the plaintiff have actual notice of their existence, nor can the Court take judicial notice of them. Moreover, their authenticity cannot be assumed. Their relevance, authenticity and reliability should await discovery.

The *Goel* Court continued (820 :

Of course, the Federal Rules of Civil Procedure contemplate that when a district court is presented with materials outside the pleadings at the motion-to-dismiss stage, circumstances sometimes favor their consideration. If the court wishes to take account of such materials, however, the Rules oblige it to treat the motion as one for summary judgment under Rule 56 and give all parties a reasonable opportunity to present all the material that is pertinent to the motion.

*See also Oberlander v Coinbase Global Inc.*, ___ F 3d___, 2024 U.S. App. LEXIS 8200, at *8 (2d Cir Apr. 5, 2024, No. 23-184-cv): "[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint" (internal quotation marks and citations omitted).

But here there are absolutely no documents which the FAC relies upon other than the ones attached to it, and even those are not all essential. It makes no reference to anything else, nor need it do so. By contrast, none of the defendants' exhibits is integral to the complaint, and so none of them can be considered. The FAC and its exhibits make no reference, explicitly or implicitly, to any other document, proceeding, statement, tweet, or transcript, and nothing additional outside of the FAC is needed to plead a valid and sufficient complaint for defamation. In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, and if it chooses to go beyond them, it must treat the motion as one for summary judgment.

A defamation complaint in Federal Court need not even set forth the exact words claimed to be defamatory, unlike in New York State Courts. "[A] defamation action brought in federal court is governed by the more liberal pleading standard of [Federal Rule of Civil Procedure] 8, pursuant to which a complaint alleging defamation is not required to contain the defamatory statements *in haec verba* as long as it affords defendant sufficient notice of the communications complained of to enable him to defend himself." (*Dollar Phone Corp. v Dun & Bradstreet Corp.*, 2010 US Dist LEXIS 134417, at *17 [EDNY Sep. 2, 2010, No. 09-CV-3645 (ILG) (SMG)])(cleaned up).

Some of the defendants' exhibits purport to establish that their statements are true. But in a defamation case, truth is an affirmative defense in an answer, not a basis for dismissal on a motion. The allegations in the complaint are by definition presumed to be true, and thus

an allegation that defamatory statements are false is an element of the claim, and cannot be successfully refuted at the pleading stage. It is an affirmative defense, and of course if truth is eventually proven, then a defamation plaintiff will lose. But that is not the case here and now..

Defendants also dispute the authenticity of certain translations, and submit their own. Where there is such a dispute, the Court should be reluctant to resolve the matter on a motion. *See Hayashi v Shunzo Ozawa*, 2019 US Dist LEXIS 53130, at *8 [SDNY Mar. 28, 2019, No. 17-cv-2558 (AJN)): "the Second Circuit has indicated that if a translation from a foreign language is disputed *and* the relevant social context is primarily foreign, it may be preferable to avoid unnecessarily deciding this issue on a motion to dismiss if possible"), *citing Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402-04 (2d Cir. 2006)(emphasis in original). If the defendants' French translations are more accurate and more anodyne than the plaintiff's, and they are not plausibly defamatory, then defendants will prevail. But these and other issues cannot be resolved now.

Defendants also cite to definitions in the Haitian constitution as to what is defamatory. But this case is governed by New York law, because the defendants are here, and they cannot successfully argue that Haitian law should control. In any event, this Court cannot take judicial notice of Haitian law, nor of any other proceedings in Haiti, except to note their existence. *See Russian Entertainment Wholesale, Inc. v Close-Up Intl., Inc.*, 482 F App'x 602, 604 (2d Cir. 2012)(a party that intends to rely on foreign law must provide notice of

such intent by pleading or other writing); and *Clarkson Co. v. Shaheen*, 660 F.2d 506, 512 n.4 (2d Cir. 1981)(Court was not obliged to take judicial notice of foreign law where neither party disputed applicability of forum state's substantive law). The threshold question on this motion is whether the complained-of statements are susceptible of a defamatory connotation under the law of New York. Thus, the Haitian Penal Code is irrelevant here, and none of its provisions are before the Court on this motion.

So too are the purported transcripts of M. Henri's radio programs. Apart from their unknown authenticity, it is of no moment on this motion what *he* actually said, but what the defendants said. If the prosecutor did not consider his single interview to be potentially criminal, then it is irrelevant what was said on any of them in any event.

The basic flaw in defendants' argument is that whether a particular document is "integral to the complaint" and therefore can be considered in a Rule 12(b)(6) motion, is up to a plaintiff in drafting the complaint. It is not up to a defendant who thinks that something else should have been included. It is of course true that a defendant can submit complete copies of exhibits which are incomplete, or which are referred to but not attached, or which are admissible court records. But that is not what the defendants have done here. Their argument that all of their 131 pages of material is integral to the complaint, or somehow referred to, are even relevant, should be rejected.

And of course, if the Court intends to consider them, it must convert the motion to one for summary judgment, and provide such notice, and permit the parties to conduct such

discovery, as may be appropriate. But we submit that doing so would be premature. It would be preferable to deny the motion, have the defendants answer the complaint, and then proceed to an orderly discovery plan.

## POINT II

## N.Y. CIVIL RIGHTS LAW § 74 DOES NOT APPLY, BECAUSE THE STATEMENTS WERE NOT A REASONABLY ACCURATE SUMMARY OF THE PROSECUTOR'S LETTER, AND CONTAINED OTHER MATTER.

Defendants next argue that N.Y. Civil Rights Law § 74 bars this action, because their statements were an accurate summary of the prosecutor's letter, as augmented by other materials which they have submitted. But those other materials are not part of the FAC, and are not properly before the Court on this Rule 12(b)(6) motion. Yet even if they are considered, the fair reporting privilege of Civil Rights Law § 74 does not apply, because the defendants' statements were not a reasonably accurate summary of what the letter actually said. And it is the two prosecutor's letters which definitively show that the defendant's postings were false and defamatory.

The statute says, in full:

A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

*This section does not apply to a libel contained in any other matter added by any person concerned in the publication;  or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.* (emphasis added).

-10-

"It is for the Court to determine as a matter of law if a publication is a 'fair and true' report under section 74, unless the Court determines that an issue of fact remains." *Wexler v Allegion (UK) Ltd*., 374 F Supp 3d 302, 312 (S.D.N.Y. 2019). Reporting is substantially accurate "if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)(citations omitted). However, Section 74 "does not afford protection if the specific statements at issue, considered in their context, suggest[] more serious conduct than that actually suggested in the official proceeding." *Id.* (internal quotations and citations omitted). See also *Test Masters Educ. Servs. v NYP Holdings, Inc.*, 2007 US Dist LEXIS 96228, at *7-9, n 4 (SDNY Sep. 18, 2007, No. 06 CV 11407 (BSJ)).

There are many cases which found that the differences between the official proceeding as it actually happened, and as it was reported, were sufficient to deny the privilege of Civil Rights L. § 74. *See, e.g., Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 AD2d 434, 436, 630 N.Y.S.2d 18  (1st Dept. 1995)("the privilege does not extend to statements in a report that imply misconduct beyond that alleged in the judicial proceeding on which the report is based"); *Ocean State Seafood, Inc. v. Capital Newspaper, Div. of Hearst Corp.*, 112 A.D.2d 662, 666, 492 N.Y.S.2d 175 (3d Dept. 1985) ("privilege does not apply when the news account of the judicial proceeding is combined with other facts or opinions to imply wrongdoing"); *D'Annunzio v Ayken, Inc.*, 876 F Supp 2d 211, 218 (E.D.N.Y 2012)("the

privilege does not extend to statements in a report that imply misconduct beyond that alleged

in the judicial proceeding on which the report is based").

More recently there is *Carroll v Trump*, 664 F.Supp.3d 550 (SDNY 2023), which

denied Donald Trump's summary judgment motion against E. Jean Carroll's defamation

complaint:

> "A report may be considered fair and true under Section 74 if its substance is
> substantially accurate. A report cannot be said to be substantially accurate,
> however, if it would have a different effect on the mind of the recipient than
> the actual truth. In other words, Section 74 does not afford protection if the
> specific statements at issue, considered in their context, suggest more serious
> conduct than that actually suggested in the official proceeding." (citing cases;
> cleaned up).

> The contrasts between Mr. Trump's assertions in his Carroll I answer and his
> October 12 statement show that a reasonable juror could find that his statement
> had a different effect on a reader than his denials and affirmative defense in his
> answer...The Court need not and does not now decide the ultimate issue of
> whether Mr. Trump's statement is or is not a "fair and true" report of a judicial
> proceeding as a matter of law. It suffices for the purpose of denying summary
> judgment that a reasonable jury could find so as a matter of fact.
> (664 F Supp 3d at 561-562).

The prosecutor's letter here said nothing more than that the plaintiff was "invited."

He was not summoned, he was not accused, and he was never charged, let alone convicted.

The translated text is (FAC, Exh. 1):

> The Government Commissioner of the First Instance Court of Port-au-Prince
> presents his compliments and invites you to appear at the Public Prosecutor's
> Office on Wednesday, February 1, two thousand and twenty-three (2023), at
> ten (10) o'clock in the morning. The Government Commissioner, acting in his
> capacity as guarantor of social order, has noted considerable deviations in one
> of your recent broadcasts, which could jeopardize public peace. These
> deviations violate the basic rules governing the exercise of the noble

-12-

profession of journalist, as well as the provisions of sections 28-2, 2nd paragraph, 28-3 of the Constitution and sections 64, 67, 313 onwards of the Haitian Penal Code.

First, a prosecutor who believes that a crime has been committed is not likely to merely "invite" a suspect to appear; an arrest warrant is far more likely, or at least a formal notice directing, not merely "inviting," an appearance. Second, "deviations" are not crimes. While such a letter is unlikely to be sent to a journalist or broadcaster in the United States, given the First Amendment (or indeed to anyone, given its potential for self-incrimination), it is perhaps understandable in a violence-plagued nation like Haiti. Yet it is still nothing more serious than an expression of concern about the potential effect on the public peace of one (and only one) of plaintiff's broadcasts, and under no reasonable interpretation could it be considered an accusation, or even an implication, of criminal conduct. Therefore, any statement suggesting that the broadcaster is a criminal is potentially defamatory.

When M. Henri responded, saying that he was not in Haiti, and thus could not easily appear when invited, the prosecutor dropped the request entirely and did not press the matter thereafter. Were it a truly serious matter, that would surely not have been the response. Moreover, the prosecutor later issued a letter completely exonerating M. Henri of any wrongdoing in the matter. About this letter, defendants say "[u]nfortunately for Plaintiff, Defendants are not soothsayers with the ability to predict the future; they only had the ability to report on the information available to them at the time, not what may have happened eight months later." Mem. at 26. Newspapers make the same argument when, for example, a

-13-

person charged with a crime is later acquitted. They are not obliged to report that. But if the report is willfully and knowingly false when made, as it is here, the damage is done, regardless of later developments.

Defendants' statement, by contrast, falsely characterized the prosecutor's invitation as follows (FAC, ¶ 21):

> ..the journalist Guerrier Henri was summoned by the Court of Port-au-Prince according to the Radio Télé Emancipation. The information professional was accused of having links with armed bandits. In one of his declarations, he had asked for forgiveness for giving the floor to known criminal during his show. His file is rumored to be transferred to the Judicial Investigation Office. The charges are receiving stolen goods, complicity and privileged relationships with armed gangs,  according to the previously cited station.

This language creates a far different impression from that of the actual words in the letter. Plaintiff was not, and has never been, accused of anything. Yet the defendants essentially called him a criminal, alleging that he had been charged with crimes, when in fact he was charged with nothing. That is sufficient to deny–at least at this stage–the benefits of Civil Rights Law §74. The fair reporting privilege does not apply. At least its application is a question of fact, *i.e.* a jury question. It is not a basis for dismissal as a matter of law.

## POINT III

## <u>THE HEADLINE CAN BE SEPARATELY DEFAMATORY.</u>

The defendants make much over the headline in their second article, and claim that it is a fair summary of the article itself. But there is a significant difference between being "invited" and "summoned," especially regarding a letter from a public prosecutor.

-14-

It is long-established in New York that an article's headline can be defamatory, regardless of the statements in the article itself. In one of the earliest cases, *Shubert v. Variety, Inc.*, 128 Misc 428 (Sup.Ct.N.Y.Co.1926), *aff'd* 221 App.Div. 856 (1st Dept.1927), the Court refused to dismiss a libel claim based upon the headline "Shuberts Gouge $1,000 from Klein Brothers/Force Vaudeville Act to Buy Release." Citing dictionary definitions of "gouge," and concluding that the word could mean deception or fraud, the Court held that the headline was libelous *per se*, and would be actionable even if the rest of the article was not:

> The fact that the alleged defamatory statement is contained in the headline, together with the further fact that the body of the article does not of necessity negative the libelous meaning of that headline, are circumstances which possibly render the article ambiguous and, therefore, capable of two constructions, one innocent and the other harmful. In that event, the question of which construction shall be adopted, would be one for the jury.
> 128 Misc. at 431.

The *Shubert* case has been frequently and favorably cited in the century since. *See, e.g., Schermerhorn v Rosenberg*, 73 AD2d 276, 287 (2d Dept 1980)("A headline is often all that is read by the casual reader and therefore separately carries a potential for injury").

There are also federal cases citing New York law, *see, e.g., Cianci v New Times Publishing Co.*, 639 F.2d 54 (2d Cir.1980), the headline was "Buddy We Hardly Knew Ya," an innocuous phrase on the face of it. But the Court said that, in the context of the article as a whole, a jury could find it defamatory. In *Celle v Filipino Reporter Enters.*, 209 F.3d 163 (2d Cir. 2000), the Second Circuit found a sub-headline defamatory as well, and affirmed a

jury verdict of libel. *See also Rudin v. Dow Jones & Co.*, 510 F. Supp. 210, 215 (S.D.N.Y.1981)(describing his attorney as "Sinatra's Mouthpiece").

Thus, the question of whether the headline is separately potentially defamatory should be a question of fact, and is not determinable on this motion.

**POINT IV**

**THE WIRE SERVICE DEFENSE DOES NOT APPLY HERE.**

Defendants argue that the defamatory statements complained of were based not just on the prosecutor's letter, but upon tweets and other news stories from other publications which they viewed. Therefore, they say, since those were additional sources for their articles, they are entitled to (a) attach them as exhibits in support of their motion, and (b) prevail under the so-called "wire service" defense. This is erroneous.

In the leading case which examined this defense, *Jewell v NYP Holdings, Inc.*, 23 F.Supp. 2d 348 (S.D.N.Y. 1998), the New York Post was sued by Richard Jewell, a Georgia resident whom the newspaper had falsely accused of involvement in a bombing which occurred in Atlanta during the 1996 Olympic Games. The Post raised the "wire service" defense, arguing that their articles reasonably relied upon wire reports published by the Associated Press and broadcasts by Cable News Network, and that they were therefore not liable, citing a Florida Supreme Court case from 1933, *Layne v. Tribune Co.*, 108 Fla. 177, 146 So. 234 (1933)(en banc).

The District Court noted that no New York Court had ever cited *Layne*, but then said that "New York recognizes a general republication defense applicable to anyone who republishes material from any source, provided that there was no substantial reason to question the accuracy of the material or the reputation of the reporter. " *Jewell, supra* at 371.

The Post had raised the defense by submitting affidavits from the two reporters who had written the stories which gave rise to the suit. They had said that they generally relied on reports from the Associated Press, but could not recall specifically if they had done so for the articles about Jewell. The Court found this insufficient, and ordered that the reporters submit to depositions to determine whether, and to what extent, they had actually relied on the AP. The depositions were equally as inconclusive, and so the Court ruled that the testimony raised issues of fact as to such reliance, denied summary judgment, and left the question for the jury.

Here, by contrast, the defendants themselves submitted nothing to establish that they had relied upon anyone else's reporting. We only have attachments of other materials, whose reliability and authenticity cannot be assumed at this point (especially because they are translations from Haitian French), and only counsel's assertion that the defendants' published internet postings must have relied upon them. The reporters' sworn statements were insufficient in *Jewell*, on a summary judgment motion after discovery. But here there are no statements at all from the defendants as to what sources they consulted. Their failure to raise the issue by their own sworn testimony that they read and relied upon these materials should

bar the defense altogether. It would be far more appropriate to permit discovery to proceed, and for the defendants to submit to depositions to test the authenticity and relevance of the exhibits, and to determine exactly how the articles came to be written.

The defenses based upon republication and wire service cases should be denied.

**POINT V**

**THERE ARE SUFFICIENT ALLEGATIONS OF MALICE
TO PERMIT DISCOVERY TO GO FORWARD.**

The requirement to demonstrate the existence of malice *at the pleading stage* in a defamation case is not a substantial one. "[A] plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence" (*Harte-Hanks Communications, Inc. v Connaughton*, 491 US 657, 668, 109 S Ct 2678, 105 L Ed 2d 562 [1989]; *Celle v Filipino Reporter Enters. Inc.*, 209 F3d 163, 183 [2d Cir 2000]).

"Clear and convincing evidence proving actual malice is not needed to survive a motion to dismiss: it is enough, at this stage, that plaintiffs allege facts showing that defendant acted with actual malice  (*Gear Up, Inc. v City of New York*, 140 AD3d 515, 515, [1st Dept 2016])(cleaned up); *Fairstein v Netflix, Inc.*, 553 F Supp 3d 48, 57-58 [SD NY 2021] ["the issue of actual malice is more appropriately weighed at a later stage of the proceedings"). *See also Kipper v NYP Holdings Co.*, 12 NY3d 348, 354 (2009)(the "clear and convincing" evidence standard only applies to a motion for summary judgment; *citing Anderson v Liberty Lobby, Inc.*, 477 US 242, 252 [1986]). *See also Silsdorf v Levine*, 59 NY2d 8 at 17 (1983)("Plaintiff's complaint alleges the actual malice element of the

defamation cause of action," so "there is no reason to prevent plaintiff from attempting to prove that defendants published the letter with actual malice").

The FAC (¶¶ 52-61) alleges that plaintiff was formerly defendant Thélus's supervisor, and discharged him for cause, because he had harassed other employees, clearly a basis for personal animus. Plaintiff also alleges that he has received threats of violence because of Thélus's false statements. To support the allegation of false statements, plaintiff alleges that Thélus lied about directly observing someone's movements, because Thélus was not even in Haiti at the time, and that his lies resulted in that person's murder. Moreover, plaintiff alleges that Thélus knew his statements were false, because (¶ 61) "he posted the Public Prosecutor's letter–which directly contradicts his statements and thus establishes their falsity–on his Facebook page." We submit that these allegations are sufficient at the pleading stage.

Defendants respond to these serious allegations by saying that they are "designed to make plaintiff seem less loathsome and/or are included only to embarrass and demean Thélus," and calls it "a half dozen paragraph conspiracy theory." Mem. at 28. They accuse plaintiff of "standing on his soapbox." *Id.* at 29. This inflammatory language is not helpful. The defendants' propensity for truthfulness (or lack thereof) is a central issue in this case. While any journalist whose credibility is criticized may resent it, when a plaintiff's reputation is at stake, such criticism comes with the job. And while defendants may argue that none of these allegations ever happened, that is not the issue on this motion. Defendants do not

dispute that the statements at issue are potentially defamatory, and that they made them. So what is at issue is only whether the allegations raise a sufficient question of malice to permit this case to proceed, and plaintiff submits that they do. The personal animus, the prior relation between them, the allegation of knowing falsity in another matter, are sufficient at this stage, and to require defendants to respond to discovery to determine exactly how their articles came to be written.

## <u>CONCLUSION</u>

The Court is respectfully requested to deny defendants' motion to dismiss in its entirety, and to direct the defendants to answer the complaint. In the alternative, if the Court elects to consider the defendants' exhibits, it should convert this motion to one for summary judgment, so notify the parties, and provide for limited discovery to enable the parties to fully support their respective positions.

Dated: July 12, 2024

Respectfully submitted,

LAW OFFICE OF RICHARD A. ALTMAN
Attorney for Plaintiff
150 East 56th Street, Suite 12B
New York, New York 10022
212.633.0123
altmanlaw@earthlink.net