UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GUERRIER HENRI,

                    Plaintiff,                    Case No.: 24-cv-00329

            -against-

THÉRIEL THÉLUS and SENET D. ACHILL,

                    Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

DANIEL SZALKIEWICZ & ASSOCIATES, P.C.

Daniel S. Szalkiewicz, Esq.
Cali P. Madia, Esq.
23 West 73rd Street, Suite 102
New York, NY 10023
(212) 706-1007
daniel@lawdss.com
*Attorneys for Defendants*

## Table of Contents

Table of Authorities ................................................................................................. 3

Preliminary Statement ............................................................................................ 4

I.    This Court Can Consider News Reports and Law. ....................................... 5

II.    The Fact that Statements Contained Information Protected by the Wire Service Privilege *and* Information Protected by the Fair Report and Fair Index Privilege does not Negate Privilege ..................................................................................................... 10

III.    Plaintiff Misstates the Headline of the Second Article ............................... 11

IV.    The Article Cites to the Sources from on Which the Article Relied, Leaving Little Question as to Whether Defendants Relied on Sources ........................................ 12

V.    Plaintiff Has Not Sufficiently Pleaded Actual Malice ................................. 13

Conclusion ............................................................................................................. 15

## Table of Authorities

**Cases**

*Biro v Condé Nast*, 807 F3d 541, 545 (2d Cir 2015)...................................................... 13

*Brimelow v NY Times Co.*, 2021 U.S. App. LEXIS 31672, at *3 (2d Cir Oct. 21, 2021, No. 21-66-cv) ...................................................................................................................... 14

*Brimelow v NY Times Co.*, 2021 U.S. App. LEXIS 31672, at *5 (2d Cir Oct. 21, 2021, No. 21-66-cv) ...................................................................................................................... 13

*Bryks v Canadian Broadcasting Corp.*, 928 F Supp 381, 383 (SDNY 1996) ................................ 6

*Fairstein v Netflix, Inc.*, 553 F Supp 3d 48, 61 (SDNY 2021) ...................................... 6

*Gagnon v Alkermes PLC*, 368 F Supp 3d 750, 763 (SDNY 2019)................................ 6

*Gold-Flex Elastic*, 1995 US Dist LEXIS 19205, at *7 (SDNY Dec. 21, 1995, 95 Civ. 3881 [LMM]).................................................................................................................. 8

*Gomez-Jimenez v NY Law Sch.*, 36 Misc 3d 230, 242 (Sup Ct, NY County 2012)........................ 6

*James v Annucci*, 2021 US Dist LEXIS 144432, at *16-17 (WDNY Aug. 3, 2021, No. 6:20-CV-6952 CJS).................................................................................................................. 9

*Mission Linen Supply v City of Visalia*, 2019 US Dist LEXIS 18567, at *10 (ED Cal Feb. 5, 2019, No. 1:15-CV-0672 AWI EPG]) ...................................................................... 9

*Palin v NY Times Co.*, 940 F3d 804, 816 (2d Cir 2019) .............................................. 13

*Sanders v Sanders*, 2022 U.S. App. LEXIS 31760, at *3 (2d Cir Nov. 17, 2022, No. 22-99)....... 5

*Tulczynska v Queens Hosp. Ctr.*, 2019 US Dist LEXIS 23751, at *11-12 (SDNY Feb. 12, 2019) 5

*Wells Fargo Bank, N.A. v Wrights Mill Holdings, LLC*, 127 F Supp 3d 156, 166 (SDNY 2015) . 9

*Zetes v Richman*, 86 AD2d 746, 747 (4th Dept 1982).................................................... 6

**<u>Preliminary Statement</u>**

Plaintiff GUERRIER HENRI ("Henri" or "Plaintiff"), spends the bulk of his opposition papers trying to hide documents from the court, citing their irrelevance and insisting that, despite overwhelming proof to the contrary, the court must accept everything he is saying as true.

Plaintiff has chosen to sue two journalists THÉRIEL THÉLUS ("Thélus") and SENET D. ACHILL ("Achill" and, together with Thélus, "Defendants") for an article that was published by on a website TripFoumi[1], that was based on (1) prior news reporting and (2) evidence received from government officials. At the time of this filing, Defendants are not aware of other similar suits being filed against the authors of the underlying reports and letters on which their publications relied; instead, Henri has focused solely on Defendants.

The article contained on the TripFoumi website was true and accurate at the time it was published. Plaintiff does not deny he consorted with criminals and received a letter requesting he meet with the prosecutor.

Perhaps the biggest red herring presented by the Plaintiff is the translation of the French word "invite[.]" Plaintiff claims that when the Haitian government used the word "invite" it meant "invite" but when Defendants used the same word it meant "summoned[.]" At this stage, the correct translation is immaterial as the letter, articles, and tweets were all written in French and all use the same word: "invite[.]" While the parties' translations may be different, the underlying word at issue in all instances is "invite" and Plaintiff cannot possibly argue that "invite" carries a substantially different implication from "invite."

---

[1] Neither defendant owns the website TripFoumi; nor are they are authors of the article. The website is owned by the Virginia limited liability company TripFoumi, LLC. Defendant Achill is a member of TripFoumi, LLC. Despite the fact that Plaintiff is suing the wrong party, given his vague allegation in the complaint Defendant Achill "is an owner of the website www.tripfoumi.com" and "defendants published" the statements, this is not currently the basis for the motion to dismiss.

These types of lawsuits attempting to silence media outlets from reporting on true events are an affront to the First Amendment and should be dismissed at the outset. This Court should consider documents which Plaintiff clearly consciously avoided in drafting his lawsuit and Defendants should not be forced to pay to litigate such demonstrably frivolous claims.

## I.    This Court Can Consider News Reports and Law.

Plaintiff takes issue with the news reports, government letters, and Haitian law annexed to Defendants' Motion to Dismiss his "simple twelve-page complaint, with six short exhibits" (Doc. 31, p. 4). Under the Federal Rules of Evidence, courts "may judicially notice a fact that is not subject to reasonable dispute because it either is generally known within the trial court's territorial jurisdiction" or can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *Sanders v Sanders,* 2022 U.S. App. LEXIS 31760, at *3 (2d Cir Nov. 17, 2022, No. 22-99). Plaintiff's bold, self-serving declaration that it "is up to a plaintiff in drafting the complaint" to determine what is "integral to the complaint "is rebutted by the fact that on a 12(b)(6) motion, courts may consider "documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. Artful pleading by the plaintiff is exemplified by the failure to include matters of which as pleaders they had notice and which were integral to their claim — and that they apparently most wanted to avoid; this will not forestall a district court's decision on a motion to dismiss." *Tulczynska v Queens Hosp. Ctr.,* 2019 US Dist LEXIS 23751, at *11-12 (SDNY Feb. 12, 2019) (internal citations and quotations omitted).

Plaintiff should not be permitted to intentionally omit material information and mislead the court to create a fictious narrative and claim.

### a. *The Court Can Take Judicial Notice of News Reports and They Are Incorporated by Reference*

Plaintiff claims news reports cannot be used to demonstrate truth of Defendants' statements, ignoring that they are being introduced not entirely for their truthfulness, but as support for Defendants' contention that the largely republished statements are protected by various privileges. It is for the same reason that Defendants included Plaintiff's translation discrepancies: to show that the French word used in the underlying Émancipation FM report on which Defendants relied is identical to the French word used by Defendants: "recel." At this point, it does not matter *what* "recel" translates to, what matters is that it is the same word that was used in the report on which Defendants relied, which is relevant for privilege purposes.

"Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Fairstein v Netflix, Inc.*, 553 F Supp 3d 48, 61 (SDNY 2021). The court in *Gomez-Jimenez* took judicial notice "that U.S. News, in addition to its general law school ranking to which plaintiffs themselves refer in their complaint, has published a plethora of information ranking law schools, including NYLS, in a number of job-related categories." *Gomez-Jimenez v NY Law Sch.*, 36 Misc 3d 230, 242 (Sup Ct, NY County 2012). The New York Southern District Court has further held that "courts may take judicial notice not of the truth in news articles, but that their contents are publicly available." *Gagnon v Alkermes PLC*, 368 F Supp 3d 750, 763 (SDNY 2019).

If courts were unable to take judicial notice of news articles, it would be impossible for a defendant to plead the wire service privilege. Citing a Fourth Department decision, the New York Southern District Court deemed a republication privileged under the wire service privilege, holding that a journalist is "entitled under New York law 'to place its reliance upon the research

6

of the original publisher.'" *Bryks v Canadian Broadcasting Corp.*, 928 F Supp 381, 383 (SDNY 1996). The case to which the court cited was *Zetes*, where the Fourth Department Appellate Division overturned a lower court's denial of a motion to dismiss, holding that the republisher "was qualifiedly privileged to rely on the research of the original publisher" unless it entertained some doubts about the accuracy, none of which existed here. *Zetes v Richman*, 86 AD2d 746, 747 (4th Dept 1982).

Defendants include the underlying reporting *not for the truth of the news articles* but to demonstrate that they are the republisher of the information for which they are being sued. The underlying reporting on which Defendants relied is included on Defendants' motion both by way of exhibit and the URLs which remain active and verifiable by the Court. Defendants should not be made to fund a protracted litigation when it is clear they are mere republishers and should be protected by the wire service privilege.

Similarly, Defendants may properly include reference to interviews conducted by Plaintiff not for the truth of the contents of those interviews but to provide this Court with context as to why Defendants had little reason to doubt the accuracy of the underlying reporting on which they relied.

Further, and as alleged in further detail in Defendants' moving papers, Plaintiff's Complaint understandably contains language from the Defendants' allegedly defamatory publications. Those publications cite to news reports issued by other publications; clearly the underlying reporting should be incorporated by reference.

### b. *The Court Can Take Judicial Notice of International Law*

Additionally, Plaintiff's inclusion of Haitian law was not to inform this Court as to what Haiti deems defamatory, but to provide language for the laws referenced in the very letter

Plaintiff included as an exhibit to his Complaint. If Plaintiff believes the January 2023 letter is relevant enough to include in his Complaint, then of course it is relevant to address what laws he is accused of "deviat[ing]" from and "violat[ing]" (Doc. 25-1, p. 15).

Pursuant to CPLR 4511(b),

> [e]very court may take judicial notice... of the laws of foreign countries or their political subdivisions. Judicial notice shall be taken of matters specified in this subdivision if a party requests it, furnishes the court sufficient information to enable it to comply with the request, and has given each adverse party notice of his intention to request it. Notice shall be given in the pleadings or prior to the presentation of any evidence at the trial...

The Federal Rules of Civil Procedure further allow this Court to "in its discretion, take judicial notice of the laws of foreign countries." *Gold-Flex Elastic*, 1995 US Dist LEXIS 19205, at *7 (SDNY Dec. 21, 1995, 95 Civ. 3881 [LMM]).

It is undisputed that Plaintiff received the January 2023 letter from the Ministry of Justice and Public Security. That letter contains references to certain laws and articles within the Haitian constitution and states that Plaintiff has violated those laws and articles. It is appropriate and proper for this Court to know what laws Plaintiff is being accused of violating in order to determine whether Defendants' interpretation of the January 2023 letter falls within the fair reporting privilege. Put differently, it would be like a plaintiff receiving a letter from a government agency indicating he had violated New York Penal Law 120.10 and then suing a reporter for writing a news story that he had been accused of assault because the face of the letter did not state "assault." To prevent a judge from considering the language of the cited law on a motion to dismiss would produce absurd results.

Again, the letter from the Prosecutor's Office which Plaintiff attaches as an exhibit to his Complaint contains citations to certain sections of the Haitian constitution and penal code.

Understanding what sections Plaintiff is being accused of violating is of course relevant to understanding the accusations against Plaintiff and should be incorporated by reference.

### c. The Court Can Take Judicial Notice of the January 2024 Letter from the Ministry of Justice and Public Safety

Plaintiff incorrectly asserts that, "as for the 2024 letter [Defendants] say that it has no bearing on this case" (Doc. 31, p. 3). The January 2024 letter directly contradicts Plaintiff's claims that the government is not pursuing charges against him. The letter provides a date and time for Plaintiff to appear "at the Prosecutor's Office... to respond to charges of promotion of criminality, incitement to violence and conspiracy against national security made by you" (Exhibit 9 of Defendants' Motion). Once again, the letter Defendants seek to introduce does not go to the truth of the statements made within the allegedly defamatory article, but to Plaintiff's attempt to absolve himself of wrongdoing for the purposes of this lawsuit.

"Official governmental letters can be judicially noticed." *Mission Linen Supply v City of Visalia*, 2019 US Dist LEXIS 18567, at *10 [ED Cal Feb. 5, 2019, No. 1:15-CV-0672 AWI EPG]). "On a Rule 12(b)(6) motion the Court may take judicial notice of matters of public record, such as documents "promulgated by or binding on a government agency." *James v Annucci*, 2021 US Dist LEXIS 144432, at *16-17 (WDNY Aug. 3, 2021, No. 6:20-CV-6952 CJS).

Where Plaintiff is claiming he is being falsely accused and railroaded by Defendants due to some vaguely pleaded vendetta, of course it is integral to the Complaint that Plaintiff, four months before filing this lawsuit, was alerted by his government that there were charges of promotion of criminality, incitement to violence and conspiracy against national security being

made against him. Regardless of whether he truly committed the underlying crimes, his receipt

of the letter and notice of the investigation should be considered on a motion to dismiss.

### d. The Court Can Take Judicial Notice that the Men Interviewed Are Criminals

"Pursuant to Rule 201, courts have considered newspaper articles, documents publicly

filed with the SEC or FINRA, documents filed with a Secretary of State, documents filed with

governmental entities and available on their official websites, and information publicly

announced on certain non-governmental websites, such as a party's official website." *Wells*

*Fargo Bank, N.A. v Wrights Mill Holdings, LLC*, 127 F Supp 3d 156, 166 (SDNY 2015). The

men interviewed by Plaintiff are notorious and violent criminals according to governmental

websites including that of the Federal Bureau of Investigations. Accordingly, this information is

integral to the wire service privilege as it supports Defendants' reliance on the underlying

reporting.

Considering the facts as a whole, the Complaint should be dismissed.

**II.    The Fact that Statements Contained Information Protected by the Wire Service
Privilege *and* Information Protected by the Fair Report and Fair Index Privilege
does not Negate Privilege.**

Plaintiff argues that some – but not all – of the allegations in Defendants' statement are

contained in the government letters and information not found within the four corners of the

letters should not be protected by the fair report and fair index privilege; Defendants agree. At

this point it should be clear; Defendants live in New York and their story was built in reliance on

two categories of sources: 1) stories published by legitimate news organizations and 2) the

government letters. Plaintiff is correct in asserting that a story written using facts from the

judicial proceeding as well as alleged facts implying wrongdoing is not privileged. That is not

what is being alleged here. Instead, every statement which Plaintiff alleges to be defamatory very clearly relies on either 1) underlying reporting undertaken by reputable news organizations or 2) letters received by Plaintiff (and forwarded to various news organizations) by the Haitian government.

Again, Plaintiff can attempt to portray this January 2023 letter as a cordial invitation all he wants but the truth is, even according to his translation, "The Government Commissioner, acting in his capacity as guarantor of social order, has noted considerable deviations in one of your recent broadcasts, which could jeopardize public peace." The letter goes on to explain that the deviations noted "violate the basic rules" as well as parts of the Haitian Constitution and Haitian Penal Code. Nevertheless, Plaintiff continues to assert that "under no reasonable interpretation could it be considered… an implication… of criminal conduct" (Doc. 31, p. 18). Plaintiff's interpretation of the letter defies basic logic as the letter, quite literally, states that Plaintiff's "deviations… violate… Haitian Penal Code." One does not need to be familiar with the Haitian criminal justice system to understand the January 2023 letter is not an invitation to a black tie affair. Anyone with an iota of common sense would understand this is not a letter someone who appreciates their freedom wants to receive.

### III.    Plaintiff Misstates the Headline of the Second Article

Plaintiff claims that "defendants make much over the headline in their second article and claim that it is a fair summary of the article itself. But there is a significant difference between being 'invited' and 'summoned,' especially regarding a letter from a public prosecutor (Doc. 31, p. 19). Plaintiff's Exhibit B remarkably translates "Guerrier Henri invite au parquet de Port-au-Prince…" to "Guerrier Henri summoned by the court of Port-au-Prince…" Again, one need not

understand French to appreciate that the French word used by Defendants is the <u>same</u> French word used by the prosecutor's office in their letter to Plaintiff.

| January 30, 2023 Government Letter | Headline of January 31, 2023 Article | Body of January 31, 2023 Article |
|---|---|---|
| Le Commissaire du Gouvernement pres le Tribunal de Première Instance de Port-au-Prince vous présente ses compliment et vous **invite** à vous présente au Parquet du Ressort… | Guerrier Henri **invitee** au parqut de Port-au-Prince pour complicité et relations avec des gang armés | …C'est dans ce context que le journaliste Guerrier Henri a été **invite** au parquet de Port-au-Prince, selon la Radio Télé Émancipation. |
| **Plaintiff's Translation of January 30, 2023 Government Letter** | **Plaintiff's Translation of January 31, 2023 Letter** | **Plaintiff's Translation of Body of January 31, 2023 Article** |
| The Government Commissioner of the First Instance Court of Port-au-Prince presents his compliments and **invites** you to appear at the Public Prosecutor's Office | Guerrier Henri **summoned** by the court of Port-au-Prince for complicity and contact with armed gangs | It is in this context that the journalist Guerrier Henri was **summoned** by the Court of Port-au-Prince according to the Radio Télé Emancipation. |

It is beyond reason that the French word "invite" could mean "to invite" when written by the Haitian Prosecutor's Office and instead mean "summon" and thus apparently be actionable when written by Defendants. It is the same word. Plaintiff's attempt to convince this Court otherwise is as shameless as it is deceptive. It is protected by the fair reporting privilege.

## IV.    The Article Cites to the Sources on Which the Article Relied, Leaving Little Question as to Whether Defendants Relied on Sources

Discovery and affidavits are not necessary to establish the wire defense. The complained of article itself establishes within its body exactly what sources were relied upon at the time the article was written.

Plaintiff cites to *Layne* to argue that additional discovery is needed to determine whether the reporter relied on other sources – like other news publications and the January 2023 letter –

when writing it. In *Layne*, the reporters "said that they generally relied on reports from the Associated Press, but could not recall specifically if they had done so for the articles about Jewell" (Doc. 31, p. 22). There is no such question here, where according to Plaintiff's own translation of the article, it was written "according to the Radio Télé Emancipation" and "according to the previously cited station" (Doc. 25, p. 4). Here, there is no reason for depositions to determine "whether, and to what extent, they had actually relied" on other sources – it is all stated within the article itself (Doc. 31, p. 22).

### V.    Plaintiff Has Not Sufficiently Pleaded Actual Malice

Plaintiff leans on his previous position as Thélus' supervisor as a basis for personal animus. Also supporting his contention that he has pleaded actual malice is his claim that he received threats of violence, and some halfcocked theory that Thélus' reporting on a different matter led to someone being murdered. Finally, he claims Thélus' posting of the Public Prosecutor's letter is proof that Thélus knew his story was false (Doc. 31, p. 24).

"[A]ctual malice does not mean maliciousness or ill will; it simply means the statement was 'made with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Palin v NY Times Co.*, 940 F3d 804, 816 (2d Cir 2019). "The reckless conduct needed to show actual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Brimelow v NY Times Co.*, 2021 U.S. App. LEXIS 31672, at *5 (2d Cir Oct. 21, 2021, No. 21-66-cv). "[W]hether actual malice can plausibly be inferred will depend on the facts and circumstances of each case. For example, a plaintiff may allege that 'a story [was] fabricated

13

by the defendant' if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information." *Biro v Condé Nast*, 807 F3d 541, 545 (2d Cir 2015).

The court in *Biro* held that plaintiff's "nonconclusory allegations against the New Yorker defendants fall short of raising a plausible inference of actual malice" recognizing that "'failure to investigate does not in itself establish bad faith,'" (*Id.*). The *Biro* court further held that nothing in the complaint indicated that the defendants should have been prompted to "question the reliability of any of the named or unnamed sources" (*Id.*).

"[A] public-figure plaintiff must plead plausible grounds to infer actual malice by alleging enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of actual malice" *Brimelow v NY Times Co.*, 2021 U.S. App. LEXIS 31672, at *3 (2d Cir Oct. 21, 2021, No. 21-66-cv). Here, as seen in the January 2024 letter from the Prosecutor's Office and the abundance of other documentation offered in support of this motion, discovery is not going to help Plaintiff, only harm him.

Plaintiff's claim that one of the Defendants was not in Haiti when he said he was and his publication of a story with "knowing falsity" led to someone being killed and should be used as indication of his propensity for dishonesty here makes little sense. First it assumes, with no support, that Defendant's reporting led to the man's murder. Second it assumes, with no support, that "Sexy" was an innocent man. Third it assumes, with no support, that Defendant was not in Haiti. Fourth it contradicts itself, simultaneously claiming Defendant falsely reported that he saw "Sexy" at Village de Dieu and that his reporting on the whereabouts of "Sexy" led to him getting killed there. Even Plaintiff's claim that he fired Defendant Thélus from Radio Zenith FM in May 2014 (Compl., ¶3, 4) is belied by a letter sent five months later in which Thélus requests

leave without pay beginning November 5, 2014 (Exhibit 17 of Defendants' Motion). Plaintiff's claims that Thélus was fired from Zenith FM in 2014 and is no longer welcome there are further contradicted by a show Thélus hosted for Zenith FM approximately six months ago[2].

To remove all doubt, Defendants have annexed as Exhibit 1 to this Reply an e-mail received from Zenith FM/Radio Télé Zénith President and CEO, Rony Colin. The letter states, in pertinent part:

> After extensive research conducted in the archives of Radio Télé Zénith on Monday, August 5, 2024, the management of the institution found that a letter from journalist Thériel Thélus, dated October 24, 2014, was received. This letter involved a request for unpaid leave due to a trip to the United States starting on November 5, 2014, with the possibility of continuing his program remotely in light of the situation and the personal conviction of the General Director of the radio. Therefore, the journalist in question, as cited above, has never been subject to dismissal, fired or abandonment of his post (Exhibit 1).

### Conclusion

Plaintiff still has not explained how Defendant Achill is responsible for any of the acts alleged. He has not set forth a valid cause of action and, even if he had, Defendants are protected by multiple privileges. For the foregoing reasons, Defendants respectfully request this Court grant their Motion to Dismiss in its entirety.

Dated: August 9, 2024
New York, New York

DANIEL SZALKIEWICZ, & ASSOCIATES, P.C.

By: _____/Daniel S. Szalkiewicz_____
Daniel S. Szalkiewicz
Cali P. Madia
*Attorneys for Defendants*



15