USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
GUERRIER HENRI,                                    :
                                                   :
                              Plaintiff,           :
                                                   :
                -against-                          :          24-CV-329 (VEC)
                                                   :
                                                   :          OPINION
THÉRIEL THÉLUS and                                 :
SENET D. ACHILL,                                   :
                                                   :
                              Defendants.          :
-------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

      Plaintiff Guerrier Henri sued Defendants Thériel Thélus and Senet D. Achill

(collectively, "Defendants") for defamation.  *See* Compl., Dkt. 1.[1]  Plaintiff brings two counts of

defamation under New York state law.  *See* Am. Compl., Dkt. 25.  Defendants moved to dismiss

the Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim (the "Motion").  *See* Defs. Mot. to Dismiss, Dkt. 28.  Plaintiff opposed the

Motion.  *See* Pl. Opp., Dkt. 31.  For the following reasons, Defendants' Motion is GRANTED.

## BACKGROUND[2]

      Plaintiff is a long-time radio show host in Haiti who has "interviewed criminals on his

programs."  Am. Compl. ¶¶ 2, 67.  Defendant Thélus is also a radio show host; his show is

broadcast in Haiti by Radio Émancipation FM, and it also airs on Facebook and YouTube.  *Id.* ¶

5.  Defendant Thélus also publishes articles on tripfoumi.com (the "Website").  *Id.* ¶ 6.

---

[1]     Plaintiff filed the operative Amended Complaint on May 10, 2024.  *See* Am. Compl., Dkt. 25.

[2]     The well-pled facts alleged in the Amended Complaint are assumed true for purposes of evaluating the
motion to dismiss.  *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The facts are taken from the Amended
Complaint and any documents incorporated by reference therein.

Defendant Achill owns the Website.[3]  *Id.* ¶ 7.  Plaintiff alleges that Defendants defamed him in

an article published on the Website and in a subsequent revision of the article.  *Id.* ¶¶ 22, 77.

**I.    January 31, 2023 Article**

On or about January 30, 2023, the Haitian Public Prosecutor's Office sent a letter to

Plaintiff requesting his appearance to discuss "serious excesses that may constitute an offense

against public order."  *Id.* ¶¶ 12, 14–15; *see also* Ex. A, Dkt. 25–1.[4]  On January 31, 2023, the

Website published an article ("Article One") with the headline: "Guerrier Henri summoned by

the court of Port-au-Prince for complicity and contact with armed gangs."[5]  *Id.* ¶¶ 20–21; *see*

*also* Ex. B, Dkt. 25–2.

Plaintiff alleges that the following statements in Article One are false and defamatory:

(i)     The headline: "[Plaintiff] summoned by the court of Port-au-Prince for complicity
        and contact with armed gangs."  *Id.* ¶ 21–22; 24.

(ii)    "It is in this context [Haiti is under the influence of armed gangs] that [Plaintiff]
        was summoned by the Court of Port-au-Prince according to Radio Télé
        Emancipation."  *Id.* ¶¶ 21, 24 (hereafter "Statement One").

---

[3]     According to Defendants, the Website is actually owned by TripFoumi, LLC, which is a Virginia limited
liability company, and Defendant Achill is a member of TripFoumi, LLC.  Defs. Reply at 4 n.1, Dkt. 34.

[4]     All quotations are translations from French.

        Plaintiff's translations are accepted as accurate for the purposes of the Motion.  The Court notes that the
translation of the letter from the Public Prosecutor in the Amended Complaint does not match the translation
attached as Exhibit A to that complaint.  The quotation in text is from the Amended Complaint.  The translation
attached as Exhibit A reads, in pertinent part: "The Government Commissioner . . . has noted considerable
deviations in one of your recent broadcasts, which could jeopardize public peace.  These deviations violate the basic
[rules of journalism] as well as [various provisions] of the Haitian Penal Code."  Ex. A, Dkt. 25–1.  The difference
in translation is not material to the resolution of Defendants' motion to dismiss.

        Plaintiff has also attached original untranslated versions of various documents.  *See* Exs. A–F, Dkt. 25: 1–6.

[5]     Plaintiff does not allege in the Amended Complaint that Defendant Thélus wrote Article One, but Plaintiff
refers to the statements as "[Thélus's] statements."  Am. Compl. ¶ 61.  Additionally, Plaintiff refers to the articles as
"statements[s] made by [D]efendant Thélus" in his Opposition.  Pl. Opp at 3.  Despite the inartful pleading, the
Court assumes that Plaintiff intends to allege that Thélus is the author.

(iii)    "[Plaintiff] was accused of having links with armed bandits."  *Id*. ¶¶ 21, 25 (hereafter "Statement Two").[6]

(iv)    "[Plaintiff] had asked for forgiveness for giving the floor to known criminal [sic] during his show."  *Id*. ¶¶ 21, 26, 32 (hereafter "Statement Three").[7]

(v)    "[Plaintiff's] file is rumored to be transferred to the Judicial Investigation Office." *Id.* ¶ 21, 27, 33–34 (hereafter "Statement Four").[8]

(vi)    "The charges are receiving stolen goods, complicity and privileged relationships with armed gangs, according to the previously cited station."  *Id*. ¶¶ 21, 29–30, 39 (hereafter "Statement Five").

Plaintiff alleges that Article One is *per se* defamatory because it falsely accuses him of a crime, *id.* ¶ 42, and because it impugns his integrity as a broadcaster, *id.* ¶ 43.

Months after the original publication, on August 25, 2023, Defendant Thélus posted the letter that Plaintiff received from the Public Prosecutor to his Facebook page.  *Id.* ¶ 61.  On August 30, 2023, the Public Prosecutor's Office told Plaintiff that no complaint had been filed against him.  *Id.* ¶ 35; *see also* Ex. C, Dkt. 25–3.  The Amended Complaint does not allege that the Public Prosecutor's August 30, 2023, statement was released publicly, but it does allege that Plaintiff asked Defendant Thélus to remove Article One from the Website around this time.  *Id.* ¶ 62.  On December 1, 2023, Plaintiff sent Defendant Thélus a cease-and-desist letter regarding Article One.  *Id.* ¶ 73; *see also* Ex. E, Dkt. 25–5.  The cease-and-desist letter asserted that the

---

[6]    The Amended Complaint alleges: "The text of the posting further says that 'the information professional had been accused of having dealings with armed bandits.'"  Am. Compl. ¶ 25.  This is not the exact language contained in Article One according to Plaintiff's translation. The Court is relying on the quoted, translated language in the Amended Complaint at ¶ 21 as the correct quotation.

[7]    The Amended Complaint alleges: "[t]he text of the posting further says that 'he apologized for putting notorious criminals on the air.'"  Am. Compl. ¶ 26.  The Court again relies upon the language in ¶ 21 as the correct quotation.

[8]    The Amended Complaint alleges: "[t]he text further says that '[h]is case is about to be transferred to the investigating magistrate's chambers.'"  *Id.* ¶¶ 27, 33.  That sentence appears in Article Two, not Article One.  *Id.* ¶ 76; Ex. F, Dkt. 25–6.  The Court assumes Plaintiff intended to refer to the equivalent sentence in Article One: "His file is rumored to be transferred to the Judicial Investigation Office."  *Id.* ¶ 21; Ex. B.

Public Prosecutor's January 30, 2023, letter did not accuse Plaintiff of "complicity and relations with armed gangs," and describes the rest of Statements One through Five as defamatory.  Ex. E.

## II.    January 2, 2024 Article

At some point before January 2, 2024, Defendants updated Article One with a new headline: "Guerrier Henri Invited To The Port-au-Prince Public Prosecutor's Office!" ("Article Two").  *Id.* ¶ 76; Ex. F, Dkt. 25–6.[9]  Article Two covers the same topics as Article One, but it has additional citations to Radio Télé Emancipation and Radio Emancipation FM.  *Id.*  Article Two also provides more details on certain assertions.

Plaintiff alleges that the following statements in Article Two are false and defamatory:

(i)    "[Plaintiff] is accused of having privileged relations with armed bandits, according to a tweet from radio Emancipation FM."  *Id.* ¶¶ 76–77, 79 (hereafter "Statement Six").

(ii)    "In one of his broadcasts, he had asked the public to forgive him for having given his microphone to the various gang leaders who terrorize the population, notably Krisla, head of Tibwa, and Vitelhomme Innocent, the powerful 'Kraze Barye' gang leader actively wanted by the US judicial authorities for the kidnapping of several American citizens."  *Id.* (hereafter "Statement Seven").

(iii)    "According to Emancipation FM radio, [Plaintiff's] case is about to be transferred to the examining magistrate's office."  *Id.* (hereafter "Statement Eight").

(iv)    "The charges are: receiving stolen goods, complicity and privileged relations with armed gangs, as reported by Emancipation FM . . . ."  *Id.* (hereafter "Statement Nine").

## DISCUSSION

## I.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  A

---

[9]    Presumably Defendants did so in response to Plaintiff's cease-and-desist letter.

plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). On a motion to dismiss, the court is limited to "the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) (citation omitted). The court accepts all well-pled facts in the complaint as true and can draw reasonable inferences from them, but it is "not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020) (citation omitted). Factual allegations do not need to be perfectly detailed, but they do need to be "sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted).

## II.    Defamation

To state a claim for defamation under New York law,[10] a plaintiff must allege: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). A public figure

---

[10]    Neither party fully addresses whether New York law governs this dispute, although the motion was briefed as though it does. In defamation cases, New York "applies the law of the state with the most significant interest in the litigation." *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (quoting *Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999)). New York typically defaults to the plaintiff's domicile. *Id.* at 176–77 (citation omitted). In defamation cases where the publication is widely distributed, courts employ a "comprehensive, multi-factor test" to determine the applicable law, including factors such as "where [the] plaintiff suffered the greatest injury; where the statements emanated and were broadcast; where the activities to which the allegedly defamatory statements refer took place; and the policy interests of the states whose law might apply." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.,* 772 F. Supp. 2d 519, 559 (S.D.N.Y. 2011) (cleaned up). This test might result in Haitian law applying to the defamation claims. The parties' briefs, however, assume that New York law controls, and such "implied consent to use a forum's law is sufficient to establish choice of law." *Tehran-Berkeley Civ. & Env't Eng'rs v. Tipetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989).

plaintiff[11] must also adequately allege that the libelous statement was made with "actual malice, that is, made with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* (citation omitted).  Facts suggesting personal ill will alone, without more, are not adequate to allege actual malice; the existence of facts tending to show bias can, however, together with other facts from which the Court can infer that the defendant should have entertained actual doubts of the truth of the statement, adequately allege reckless disregard. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 187 (S.D.N.Y. 2020).

A publisher has an affirmative defense if an allegedly defamatory statement is a "republication."  "New York recognizes a general republication defense applicable to anyone who republishes material from any source, provided that there was no substantial reason to question the accuracy of the material or the reputation of the reporter." *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 371 (S.D.N.Y. 1998).  Thus, to succeed on a defamation claim in which the allegedly defamatory statement cites to a source, a plaintiff must provide evidence tending to show that the defendant had reason to doubt the accuracy of the source's reporting. *See id.*

On the element of falsity, a disputed translation that alters the meaning of a word and makes the information it conveys "false" is best settled after the motion to dismiss stage. *See Hayashi v. Ozawa*, No. 17-cv-2558, 2019 WL 1409389, at *3 (S.D.N.Y. Mar. 28, 2019) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402–04 (2d Cir. 2006)) ("[I]t may be preferable to avoid unnecessarily deciding [translation] issue[s] on a motion to dismiss if possible.").

**A.  Count I**

Plaintiff claims the headline and entirety of Article One is defamatory *per se*.  For each potentially defamatory statement in Article One, there is no dispute that Plaintiff sufficiently

---

[11]    Plaintiff concedes that he is a public figure.  Pl. Opp. at 2.

alleges a written defamatory statement about himself, publication to a third party, and damages,[12] three of the five elements of a defamation claim.  His claims as to Article One founder, however, on the other elements of his claim.

### 1.  Statements One and Five Are Non-Actionable Republications

As noted above, it is an affirmative defense that the alleged defamation was republished from an identified source.  Defendants argue that Plaintiff's claims should be dismissed because they are barred by the republication defense.  Defs. Mem. at 20–22, Dkt. 28–2.  "Dismissal under [FRCP 12(b)(6)] is appropriate when a defendant raises . . . [a statutory bar] as an affirmative defense and it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law."  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citation omitted); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (when an affirmative defense appears on the face of the complaint, a defendant can raise it as a basis for a Rule 12(b)(6) motion to dismiss).

Although New York State has not codified its republication defense, "New York recognizes a general republication defense applicable to anyone who republishes material from any source, provided that there was no substantial reason to question the accuracy of the material or the reputation of the reporter."  *Jewell*, 23 F. Supp. 2d at 371.  In this case, the republication

---

[12]    Under New York law, a defamation plaintiff "must either plead special damages or that the statements are defamatory *per se*."  *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 171 (S.D.N.Y. 2021) (citation omitted).  *Per se* defamatory statements "charge the plaintiff with a serious crime" or "tend to injure another in his or her trade, business or profession" and do not require proof of damage.  *Id.* (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (N.Y. 1992)).  "Special damages contemplate the loss of something having economic or pecuniary value."  *Liberman,* 80 N.Y.2d at 434–5 (cleaned up).

Plaintiff alleges that Defendants accused him of a crime and that they "impugn[d] [his] integrity as a broadcaster."  Am. Compl. ¶¶ 42–43.  It is not entirely clear whether the crimes imputed to Plaintiff in Article One are considered "serious" crimes in Haiti, *see Liberman*, 80 N.Y.2d at 435, but Plaintiff alleges damage to his reputation as a journalist.  Drawing all inferences in favor of Plaintiff as the Court must on a motion to dismiss, Plaintiff has adequately alleged that the statements are defamatory *per se*.

defense is present on "the face of the complaint," as Plaintiff quoted the alleged defamatory articles in full in the Amended Complaint. Am. Compl. ¶¶ 21, 76.

Because Statements One and Five are clearly attributed to other news organizations, the republication defense is apparent on the face of the Amended Complaint. Plaintiff has alleged no facts from which the Court can plausibly infer that Defendants had reason to question the material upon which they relied. Accordingly, the Amended Complaint fails to state a claim as to Statements One and Five.

### 2. The Headline and Statement One Are Not Actionable Because Plaintiff Has Not Adequately Alleged that the Statements are False[13]

Starting with the headline, a headline can be actionable even if the contents of the article are not, *cf. Seldon v. Shanker*, 143 A.D.2d 3, 5 (1st Dep't 1988), but a headline is not independently actionable if it fairly indicates the substance of an accurate article, *Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 287 (2d Dep't 1980). In this case, the headline accurately summarizes Article One — every element included in the headline is later referenced in the body of the article. Am. Compl. ¶ 21. Because it is a "fair index" of the article, as a matter of law, it is not independently actionable. *See Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 115 n.1 (2d Cir. 2005).

As to Statement One (which is protected by the republication defense in any event, *see supra*), Plaintiff does not allege facts from which the Court can plausibly infer that it is false. Plaintiff argues that by using the word "summoned," Defendants distorted the Public

---

[13]      Defendants attempt to introduce evidence to contradict Plaintiff's allegations of falsity. *See* Exs. 1–19, Dkt. 28: 3–21. The Court cannot review evidence proffered by Defendants on a motion to dismiss unless the evidence is integral to the complaint, *see In re Thelen* 736 F.3d. at 219, or the "evidence is incorporated by reference in the pleading . . . ." *Tulczynska v. Queens Hosp. Ctr.*, No. 17-cv-1669, 2019 WL 6330473 at *4 (S.D.N.Y. 2019) (citing *Chambers v. Time Warner*, 282 F.3d 147, 152–53 (2d Cir. 2002)). Because neither is true here, the Court will not consider the evidence Defendants have presented.

Prosecutor's letter, which used the French word "invite."  Pl. Opp. at 14; Ex. A.  Plaintiff translates the French word as "invited," not "summoned."  Am. Compl. ¶¶ 14, 24.

Although a dispute over translation ordinarily should not be resolved on a motion to dismiss, in this case, the Plaintiff has produced both the letter from the Public Prosecutor and the allegedly defamatory article in French.  *See* Exs. A, B.  Both use the word "invité"[14] to describe the action of the Prosecutor.  *See id.*  Even though the parties have translated "invité" differently, their translation quibble is not relevant; both the alleged defamation and the source document were written in French, and both used the same word.  Accordingly, Plaintiff has not alleged that Statement One is false.

### 3.    Plaintiff Has Not Alleged Actual Malice as to Statements Two Through Four

Statements Two, Three and Four are not actionable because Plaintiff has not adequately alleged actual malice.[15]

As noted above, Plaintiff concedes that he is a public figure, and it is well established that a public figure must allege "actual malice" in order to state a claim for defamation.  Plaintiff alleges that Defendant Thélus acted with ill will but does not allege any ill will on the part of Defendant Achill.  Am. Compl. ¶ 51.  Outside of the allegation of ill will, Plaintiff alleges no facts from which the Court can reasonably infer that Defendants either knew or were reckless in not knowing that these statements were false.

Plaintiff alleges that the Statements are not representative of the Public Prosecutor's letter, and that Defendant Thélus knew the contents of the Public Prosecutor's letter because he

---

[14]    The two documents use different conjugations of the same verb.  The Public Prosecutor's letter uses the present tense, "invite," whereas Article One uses the past participle, "invité."  Exs. A, B.

[15]    Statements One and Five, which fail under the republication defense, also fail because the Plaintiff has not alleged actual malice as to those statements.

posted it on his website.  *Id.* ¶¶ 23, 44, 61.  But the fact that the Article includes purported facts not in the Public Prosecutor's letter does not mean that the Defendants knew the statements were untrue.  Nothing in Article One and no facts alleged in the Amended Complaint suggest that the Article was reporting simply on the contents of the Public Prosecutor's letter to Plaintiff.  Article One makes clear that it was, at least in part, relying on sources (primarily Radio Télé Emancipation) other than the letter.  Thus, allegations that the Article went beyond the four corners of the Public Prosecutor's letter are not adequate to allege the Defendants knew the statements they published were false.

Plaintiff's August 2023 request to Defendant Thélus to remove Article One does not establish that Defendant Thélus was aware of the falsity of Article One's contents.  *See id.* ¶ 62.  This request only indicates that Plaintiff disputed those statements.[16]  Plaintiff alleges no facts from which the Court can reasonably infer that Plaintiff's request put Defendants on notice that particular statements in Article One were false.

The allegations against Defendant Achill are even less adequate to allege actual malice.  The Amended Complaint alleges that "Achill . . . knows, or has reason to know, that his statements about the plaintiff were false, because he has refused to remove the article from the tripfoumi website" as requested by Plaintiff in or around August 2023.  *Id*. ¶¶ 62, 64.[17]  Refusing to take down an article upon request does not tend to suggest that Defendant Achill was aware

---

[16]     Plaintiff does not allege that Defendants were aware of the letter he received from the Public Prosecutor that stated that he had not been charged with any crimes.  *See* Am. Compl. ¶¶ 35, 62.

[17]     This allegation is in Count I of the Amended Complaint.  *See id.* ¶ 64.  The same logic would apply to Count II, which alleges defamation in connection with Article Two, which post-dated the cease-and-desist letter.

that statements in Article One were false, particularly because there is no allegation that

Defendant Achill was even aware of the "take down" request.

        In short, Count One fails to state a claim.

### B. Count II

        Count II alleges that Statements Six through Nine are defamatory.  Statements Six, Eight,

and Nine are attributed to another source and are, therefore, potentially protected by the

republication defense.  *Id.* ¶ 76; Ex. F.  As with the statements in Count I, Plaintiff does not

allege any facts from which the Court could plausibly infer that Defendants had "substantial

reason to question the accuracy of the material or the reputation of the reporter."  *Jewell*, 23 F.

Supp. 2d at 371.

        The Amended Complaint fails to allege that any of the allegedly defamatory statements,

including Statement Seven, were made with actual malice.  Plaintiff continues to allege ill will

by Defendant Thélus, but ill will alone is not adequate to allege actual malice.  *See supra*.

Plaintiff does not allege facts from which the Court can plausibly infer that Defendants knew

their statements were false.  *See* Am. Compl. ¶ 72.

        Plaintiff alleges that he sent a cease-and-desist letter to Defendant Thélus on December 1,

2023, Am. Compl. ¶ 73, but that letter does not save Plaintiff's claim.  As with the take down

request discussed above, the mere fact that Plaintiff objected to the Article and asserted that

statements in it were inaccurate does not allow the Court to infer that that Defendants knew their

statements were false.[18]

---

[18]        A cease-and-desist letter can "put [defendants] on notice of the impropriety of their conduct,"
*Antetokounmpo v. Costantino*, No. 21-cv-2198, 2021 WL 5916512 at *8 (S.D.N.Y. 2021), and failure to comply
with a cease-and-desist letter can indicate bad faith and willful conduct on the part of a defendant, *Mintable Pte. Ltd.
v. Mintology Inc.*, No. 23-cv-8215, 2024 WL 3454825 at *8, *13 (S.D.N.Y. 2024).  The mere existence of a cease-
and-desist letter, however, does not, standing alone, tend to show that the defendant knew the published material
was false.  Here, the existence of the letter does not tend to show that Defendant Thélus knew his statements were

Although the Amended Complaint alleges that Plaintiff sent a cease-and-desist letter to Thélus, requesting that he remove Article One from the Website, it does not allege that a similar request was made to Defendant Achill nor that Defendant Achill was aware of the cease-and-desist letter. *See* Am. Compl. ¶ 73; Ex. E.

In short, Count II fails to state a defamation claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint is GRANTED.

Plaintiff's claims are dismissed with prejudice. Plaintiff has not requested in the alternative leave to amend. Although generally, leave to amend should be "freely give[n]," *see* Fed. R. Civ. P. 15(a), "leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citation omitted). Plaintiff has already amended the Complaint once and failed to remedy its defects, despite Defendants raising these issues in their motion to dismiss the original Complaint. *See* Defs. Mem. at 19–24, Dkt. 20–1. Because Plaintiff's suit is based upon the faulty proposition that the Public Prosecutor's letter is the sole source of the allegedly defamatory reporting and that its contents are the entire truth of the matter at hand, and because Plaintiff has already had an opportunity to amend his complaint, the Court concludes that leave to amend would be futile.

---

false, especially because Defendant Thélus revised Article One to further cite his sources soon after Plaintiff sent the letter. Am. Compl. ¶¶ 73, 75–76.

The Clerk of Court is respectfully directed to close the open motion at docket 28 and terminate the case.

**SO ORDERED.**

**Date:**  **December 10, 2024**
**New York, New York**

                                                                                **VALERIE CAPRONI**
                                                                        **United States District Judge**